# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR & CONGRESS OF INDUSTRIAL ORGANIZATIONS<br><br>and<br><br>BALTIMORE-DC METRO BUILDING AND CONSTRUCTION TRADES COUNCIL,<br><br>   Plaintiffs,<br><br>  v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Case No. 20-cv-<br>)  1909-BAH |

## DEFENDANT NATIONAL LABOR RELATIONS BOARD'S
## MOTION FOR TRANSFER TO THE D.C. CIRCUIT

Defendant National Labor Relations Board ("NLRB" or "the Board") moves pursuant to 28 U.S.C. § 1631 to transfer this case to the United States Court of Appeals for the District of Columbia Circuit; this Court lacks subject matter jurisdiction to review the administrative action challenged by Plaintiffs American Federation of Labor & Congress of Industrial Organizations and Baltimore-DC Metro Building and Construction Trades Council (collectively, "AFL-CIO") in the Complaint.

## FACTUAL BACKGROUND

This case involves AFL-CIO's July 15, 2020 facial challenge to a final rule issued by the Board on April 1, 2020. *See* Representation-Case Procedures, 85 Fed. Reg. 18366 (Apr. 1, 2020) ("Final Rule"). (Compl. ¶ 9, ECF No. 1). The Final Rule became effective July 31, 2020. Representation-Case Procedures, 85 Fed. Reg. 20156 (Apr. 10, 2020).

The NLRB is an independent federal agency created by Congress in 1935 to administer the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. §151 *et seq.* The NLRB is vested with the power to safeguard employees' rights to organize and to determine whether to have unions as their bargaining representative. The NLRB also acts to prevent and remedy unfair labor practices committed by private sector employers and unions.

Employees can unionize in either of two ways—by petition to the Board, or by voluntary recognition by the employer on the basis of the union's showing of majority support. One of the Board's primary duties under the Act is to determine, upon the filing of a petition, whether a question of union representation exists concerning an appropriate unit of employees. 29 U.S.C. § 159(b)-(c). If such a question does exist, the Board generally conducts a secret-ballot election and certifies the results, including, if appropriate, the identity of the union certified as representative. 29 U.S.C. § 159(c)(1).[1] A third method of unionization—the signing of a "pre-hire" collective-bargaining agreement under Section 8(f) of the Act, 29 U.S.C. § 158(f)—is available exclusively in the construction industry.

Over many decades, the Board has created through adjudication several discretionary bars to the timely processing of a validly-supported election petition; three of these bars – the blocking-charge policy, the voluntary recognition bar, and the contract bar – are the subject of this instant rulemaking. Representation-Case Procedures: Election Bars; Proof of Majority Support in Construction Industry Collective-Bargaining Relationships, 84 Fed. Reg. 39930, 39931 (2019) (hereafter, "NPRM").

---

[1] Certification confers certain benefits upon the union not obtainable through voluntary recognition, including a one-year bar upon the holding of any election intended to challenge the union's majority status in the unit.

A "blocking charge" is a Board charge alleging an unfair labor practice occurred that, if proven, would interfere with employee free choice in an election or would be inherently inconsistent with the petition itself. In such a situation, under the blocking-charge policy in effect prior to the Final Rule, the Board could hold the election petition in abeyance pending resolution of the unfair labor practice charge. *Id.* at 39931.

The "voluntary recognition bar" holds that an employer's voluntary recognition of a union bars the filing of an election petition for a reasonable period of time following recognition. If the parties reached a collective-bargaining agreement during that reasonable period, the Board's "contract bar" doctrine would continue to bar election petitions for the duration of the agreement, or three years, whichever is shorter. Final Rule, 85 Fed. Reg. at 18367.

Not every agreement will bar a Board-conducted election. Due to the unique nature of construction industry employment, that industry's employers and unions may enter voluntarily into collective bargaining agreements without a Board-conducted election or a union first demonstrating majority support, as permitted under Section 8(f) of the Act. NPRM, 84 Fed. Reg. at 39935. This "Section 8(f) agreement" does not act as a contract bar. But if a construction industry employer voluntarily recognizes a union that possesses majority support, as permitted under Section 9(a) of the Act, this "Section 9(a) agreement" may act as a contract bar. Only a Section 9(a) agreement can act as a contract bar against an election petition. NPRM, 84 Fed. Reg. at 39935.

The Final Rule makes three amendments to the Board's Rules and Regulations. First, it modifies the current blocking-charge policy and implements new procedures. Second, it modifies the voluntary recognition bar to apply only when certain conditions are met. Third, it modifies the proof required for the contract bar to apply to a construction industry contract.

**ARGUMENT**

AFL-CIO contends that this Court has jurisdiction under the general jurisdictional provisions of 28 U.S.C. § 1331 because, under the Administrative Procedure Act, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. (Compl. ¶ 2). But it has filed its complaint in the wrong court.

Federal courts have limited jurisdiction and possess "only that power authorized by Constitution and Statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The rule that a federal court may not proceed where it lacks subject matter jurisdiction "is inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1882).

Consequently, in any action, the court's initial task is to ascertain whether its jurisdiction extends to the issue in question, including whether the matter must be raised before an alternate forum. Where the court concludes that jurisdiction is lacking, it "shall" transfer the action to another court where the action could have been brought "if it is in the interest of justice." 28 U.S.C. § 1631.

I.   **The D.C. Circuit construes ambiguities in direct-review statutes in favor of circuit-court jurisdiction, in the absence of a firm indication that Congress wanted a matter heard in district court.**

In the D.C. Circuit, "the normal default rule is that persons seeking review of agency action go first to the district court rather than to a court of appeals." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (quoting *Nat'l Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012)). But direct review by the relevant circuit court is proper when "a direct-review statute specifically gives the court of appeals subject matter jurisdiction to directly review an agency action." *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007). Importantly, where the

4

application of a direct-review statute to a particular agency action is ambiguous, direct review in the circuit courts is appropriate absent a "firm indication" that Congress intended otherwise. *Nat'l Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985)).

In *Investment Company Institute v. Board of Governors of the Federal Reserve System* ("*Investment Company*"), the term "order" within a judicial review provision was held to encompass rulemaking. 551 F.2d 1270, 1278 (D.C. Cir. 1977). Since that case, it has become settled law that "a court of appeals [may] exercise statutory jurisdiction in a pre-enforcement review of rules where the statutory language refers only to orders." *See* 33 Charles A. Wright & Charles H. Koch, Jr., Federal Practice & Procedure § 8299 (2006) (internal quotation omitted). Circuit courts have thus exercised direct review of agency rules promulgated under multiple other statutes that contained similar direct appellate review authority. *New York Republican State Committee v. Securities and Exchange Commission*, 70 F. Supp. 3d 362, 370-71 (D.D.C. 2014) ("*NYRSC I*"), *aff'd*, 799 F.3d 1126, 1129-30 (D.C. Cir. 2015) ("*NYRSC II*") (Investment Advisers Act of 1940); *Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*, 764 F.2d 896, 903 & n.37 (D.C. Cir. 1985) (Waste Act of 1982); *City of Rochester v. Bond*, 603 F.2d 927, 932-35 (D.C. Cir. 1979) (Federal Aviation Act and Communications Act of 1934); *see also Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 347 (1st Cir. 2004) (instructing "that jurisdictional statutes should be construed so that agency actions will always be subject to initial review in the same court, regardless of the procedural package in which they are wrapped"); *Nat'l Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1526-28 (10th Cir. 1993) (Federal Aviation Act); *Nw. Airlines, Inc .v. Goldschmidt*, 645 F.2d 1309, 1314 (8th Cir. 1981) (following *Investment Company*); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312–14 (7th Cir. 1980)

(relying extensively on *Investment Company* to review regulation promulgated under the Federal Aviation Act).

Thus, in the D.C. Circuit, it is "blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules." *NYRSC II*, 799 F.3d at 1129-30; *Nat'l Fed. of the Blind v. DOT*, 827 F.3d 51, 55 (D.C. Cir. 2016). Additionally, "absent contrary congressional intent, a statutory provision creating a right of direct judicial review in the court of appeals of an administrative 'order' authorizes such review of any agency action that is otherwise susceptible of review on the basis of the administrative record alone." *NYRSC II*, 799 F.3d at 1131; *see also Nat'l Fed. of the Blind*, 827 F.3d at 55.

## II.    The NLRA's judicial-review provision is ambiguous as to whether it covers final orders relating to rulemaking.

Since its enactment in 1935, the NLRA has given the courts of appeals exclusive jurisdiction to review final Board orders. Section 10(f) of the Act reads, in relevant part: "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia[.]" 29 U.S.C. § 160(f).

The Act does not expressly specify whether this direct review authority extends to agency rulemakings. Section 6 of the Act, which outlines the Board's rulemaking power, provides no guidance as to the locus for jurisdiction of judicial review. 29 U.S.C. § 156 ("The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by the

Administrative Procedure Act [subchapter II of chapter 5 of title 5], such rules and regulations as may be necessary to carry out the provisions of [the NLRA]").[2]

The NLRA does not otherwise define or address the term "order" as used in Section 10(f), nor does its legislative history speak to the matter. *See, e.g.*, S. Rep. 74-573 (1935), reprinted in 2 NLRB, LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT, 1935, at 2300, 2305 (1949); H.R. Rep. 74-972 (1935), reprinted in 2 LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT, 1935, at 2956, 2960 (same).

Under *Investment Company*, therefore, the ambiguous term "order" in section 10(f) of the NLRA requires direct review of NLRB rulemakings in a circuit court. Accordingly, the case at bar is directly reviewable in the District of Columbia Circuit Court of Appeals and should be rightfully transferred there.[3]

## III. This Court's decision in *AFL-CIO v. NLRB*, No. 20-675, holding that a similar lawsuit could proceed in district court, is both distinguishable and erroneous.

Notwithstanding the foregoing, in another recent lawsuit brought by AFL-CIO against the NLRB, Judge Ketanji Brown Jackson denied a materially similar motion to transfer for want of jurisdiction. No. 20-cv-0675, 2020 WL 3041384 (D.D.C. June 7, 2020) ("*AFL-CIO I*").[4] The Board argued, as it does now, that Section 10(f) of the Act applies to agency rulemakings due to

---

[2] Parties—including the Board itself—long took for granted that Section 10(f) did not apply to rulemakings. *See, e.g.*, *Chamber of Commerce of U.S. v. NLRB*, 118 F. Supp. 3d 171 (D.D.C. 2015) (not addressing this issue); *Associated Builders & Contractors of Texas, Inc. v. NLRB*, No. 1-15-CV-026 RP, 2015 WL 3609116, at *11 (W.D. Tex. June 1, 2015) (same), *aff'd*, 826 F.3d 215, 223-26 (5th Cir. 2016). But the "existence of unaddressed jurisdictional defects" in prior decisions "has no precedential effect" on the proceedings. *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) (citing *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994)); *United States v. More*, 7 U.S. (3 Cranch) 159, 172 (1805) (Marshall, C. J.) (bench decision)).

[3] When determining the AFL-CIO's position on this motion, Board counsel requested AFL-CIO's position on the appropriate forum to which the case should be transferred in the event that the Board's motion is granted; AFL-CIO stated that it had no position on that question. Accordingly, transfer to the D.C. Circuit would appear to be in the interest of justice.

[4] The Board has appealed that ruling to the D.C. Circuit in Case No. 20-5223 (notice of appeal filed July 16, 2020).

the absence of alternate, qualifying language or statutory precedent. Judge Jackson did not disagree with the binding *Investment Company* line of case precedent just cited. Instead, as explained below, she found it inapposite because, in her view, Section 10(f) unambiguously limits its applicability to cases "that pertain[] to unfair labor practices as opposed to any other topic that the agency might have acted to address." *Id.* at *12.

First, the *AFL-CIO I* court states that Section 10(f) specifically and narrowly limited direct review to unfair labor practice ("ULP") cases. The venue provision of Section 10(f) makes reference to the "unfair labor practice in question," and *AFL-CIO I* finds that this provision strongly suggests that Section 10(f) can only be triggered when "some kind of unfair labor practice is at issue." *AFL-CIO I* at *9. Second, the *AFL-CIO I* court finds that Section 10(f)'s placement within a provision of the Act entitled "Prevention of Unfair Labor Practices" indicated that the Section related solely to ULP cases. *Id.* at *10-11. And third, the *AFL-CIO I* court relies upon dicta from the Supreme Court's decision in *American Federation of Labor v. NLRB*, 308 U.S. 401, 409 (1940) ("*AFL*")—but, as we shall show, overreads that dicta beyond the context in which it was given. *AFL-CIO I*, at *9.

*AFL-CIO I* is inapplicable here and thus does not preclude the transfer of this case to the D.C. Circuit. The *AFL-CIO I* court declined to transfer the challenge to amendments to the Board's rules and regulations to the circuit court because the altered provisions solely affected representation cases. Here, by contrast, the Final Rule changes the interface between representation cases and unfair labor practice cases, by (1) expanding the circumstances which will necessitate consolidation of the two types of proceedings (in the blocking-charge rule), and (2) defining some conduct as substantively unlawful, and other conduct as substantively lawful (in the voluntary recognition bar rule). Because the Final Rule at issue here impacts unfair labor

practice cases, it falls within the category of cases that *AFL-CIO I* expressly declined to address. *AFL-CIO I* at \*12 n.9.

But if this Court disagrees, then *AFL-CIO I* should not be followed. That decision is fundamentally inconsistent with the NLRA's structure.

A.   *This case involves unfair labor practices, and is thus distinguishable from* AFL-CIO I, *which did not.*

*AFL-CIO I*, at \*12, articulates a distinction between cases that "involve unfair labor practices" and other types of Board action. That court expressly declined to address whether a district court would have jurisdiction over cases where a rule "pertain[s] to unfair labor practices," *id.* at \*12 n.9, because it found that the matter before it "regulates representation rather than unfair labor practices[.]" But the rule at issue in that case was unusual. Of the six rule provisions directly challenged in that case, one dealt with the content of the issues to be litigated in pre-election representation-case hearings, another with the timing of elections after such hearings are held, a third with the timing of the distribution of voter lists, a fourth with the types of individuals that parties could choose as election observers, a fifth with procedures for ballot impoundment, and the last with the timing of issuance of certifications signaling the end of a representation case. *See id.* at \*5 (summarizing the contents of the rule at issue).[5]

Not so here. Simply put, two of the Final Rule's three provisions impact either the way unfair labor practice cases are litigated or the issues that can be raised in such cases:

- The elimination of blocking charges will predictably result in a significant increase in the number of cases where the tally of ballots is objected to on the grounds that the employer committed unfair labor practices that tainted election results; this typically leads to the

---

[5] The Board, indeed, believed (and still believes) that the rules in question (1) modified only procedures specific to representation cases, and (2) had no more than a de minimis impact upon any party's substantive rights. The *AFL-CIO I* court disagreed, 2020 WL 3041384, at \*13-19, but only as to the second of these points, not the first.

consolidation of representation and unfair labor practice cases into a single proceeding.[6] *See generally* Final Rule, 85 Fed. Reg. at 18378 ("from the Board's earliest years, it has set aside the results of elections based on meritorious objections and has ordered second elections").

- The Board's significant modifications to the voluntary recognition bar will affect not only the agency's willingness to process election petitions, but also may either create unfair labor practice liability (if an employer tries in bad faith to "leverage their compliance with the notice-posting requirement against the union in an attempt to extract more generous substantive contract terms" in bargaining, *id.* at 18385) or eliminate it (where an employer repudiates a collective-bargaining agreement reached with a later-decertified union, *id.* at 18384).

In truth, this should be the typical outcome; because of the intricate interplay of unfair labor practices and representation issues, the vast majority of possible Board rulemakings will have significant impact on both representation and unfair labor practice cases.[7]

    *AFL-CIO I* is thus appropriately limited to its facts. If, as the court in that case found, it is a bridge too far to find Section 10(f) applicable to rules *solely* affecting representation case procedures, that outcome is best viewed as a unique consequence of the rule at issue there. But the NLRA does not lend itself well to any attempt to hermetically seal representation cases and unfair labor practice cases into separate spheres. More directly than the *AFL-CIO I* rule, the

---

[6] 29 C.F.R. § 102.69(c)(1)(ii) ("the Regional Director may consolidate the hearing concerning objections and challenges with an unfair labor practice proceeding before an Administrative Law Judge"); NLRB, *Casehandling Manual Part Two: Representation Proceedings*, § 11420.1 (in cases where regional office finds merit to unfair labor practices overlapping with objections, it should "normally" consolidate ULP and representation cases), available at http://10.18.2.35/sites/default/files/attachments/pages/node-174/chm-part-ii-jan-2017.pdf.

[7] For example, the Board's 1991 Health Care Rule, which focused on defining appropriate bargaining units, might seem specific to representation cases and thus not subject to direct circuit-court review under the rule announced in *AFL-CIO I*. However, there are many circumstances in which a rule concerning the appropriateness of a proposed bargaining unit would impact the outcome of a ULP case. *See, e.g. South Prairie Constr. Co. v. Operating Engineers*, 425 U.S. 800, 805 (1976) (where two companies were a single employer, collective bargaining agreement would only be applied to employees of both companies if those employees constituted a single appropriate bargaining unit); *Drug Package Co., Inc.*, 228 NLRB 108, 111 n.21 (1977) (one element of demonstrating entitlement to a remedial bargaining order is the existence of an appropriate unit). Conversely, a rule establishing that certain conduct does or does not constitute an unfair labor practice will have a considerable effect upon representation cases where such conduct has been engaged in by a party and is alleged to have affected employee free choice. *E.g. Phillips Chrysler Plymouth, Inc.*, 304 NLRB 16, 16 (1991) (union committed objectionable election misconduct when its agents, "who had no demonstrated right to be there, repeatedly and belligerently refused to heed requests of the Employer's president to leave").

instant rule impacts unfair labor practices; thus, under *NYRSC II* and *Investment Company*, it must be treated as an "order" affecting unfair labor practices within the meaning of Section 10(f), and is appropriately subject to direct review in the courts of appeals.

B.   *Alternately,* AFL-CIO I *was wrongly decided, because it inappropriately conflates venue with subject-matter jurisdiction and gives district courts an outsized role in labor policy that Congress never intended.*

If this Court disagrees with the Board and finds that *AFL-CIO I* is indistinguishable from this case, then it must be squarely confronted. In such event, its analysis should be rejected. *AFL-CIO I*, first and foremost, gives undue weight to the Act's venue provision, while giving short shrift to the immediately preceding provision which actually establishes circuit courts' jurisdiction. Second, it places district courts in a major policymaking role whenever the Board acts through rulemaking, even though Congress did not give district courts any other significant function in the Act's scheme. Third, though *AFL-CIO I* relies heavily on the Supreme Court's early dicta in *AFL* to the effect that Section 10(f) applies only to ULP cases, that dicta is not dispositive; the court takes it far beyond the context in which it was uttered.

1.   Section 10(f) of the Act references unfair labor practices only as a possible basis for venue, not as a jurisdictional prerequisite.

To the first point, the Act's jurisdictional trigger for circuit court review does not mention unfair labor practices. It states that the circuit courts may review any "final order of the Board granting or denying in whole or in part the relief sought," 29 U.S.C. § 160(f), and the order under review does just that.[8] The Board and AFL-CIO agree that the Final Rule is, in fact, final (*see*

---

[8] For ease of reference, Section 10(f) reads in its entirety as follows:

Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall

Compl. ¶1). And the "relief" sought (and granted) is the Board's enactment of three significant rules. This case thus falls well within the literal language of Section 10(f).

Concededly, Section 10(f)'s *venue* provision, which immediately follows the language just quoted, allows venue not just where the aggrieved person resides or transacts business or in D.C., but also in "the circuit wherein the unfair labor practice in question was alleged to have been engaged in." *Id.*; *see AFL-CIO I*, at *9 (deeming this "a textual reference that strongly suggests that the provision is only triggered when some kind of unfair labor practice is at issue"). But "[j]udicial decisions have made clear that all intermediate federal courts have jurisdiction to review and enforce orders of the NLRB and that 29 U.S.C. §§ 160(e), (f), in designating particular forums for given cases, are concerned only with venue." *NLRB v. Wilder Mfg. Co.*, 454 F.2d 995, 998 n.12 (D.C. Cir. 1972). Crucially, "venue and subject-matter jurisdiction are not concepts of the same order. Venue is largely a matter of litigational convenience[.]" *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). Thus, the *AFL-CIO I* court equating Section 10(f)'s venue provision with its jurisdictional provision makes little sense in either practice or theory.

In a case where, as here, there is no specific "unfair labor practice in question," that part of Section 10(f)'s venue provisions has no relevance. But it's not as though Section 10(f) would be dysfunctional or inoperable if applied to cases without an "unfair labor practice in question." In any case challenging a final Board action, parties would always have access to at least one,

---

be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28, United States Code [section 2112 of title 28]. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

and usually numerous, forums for review. That Congress supplied petitioners seeking review of unfair labor practice cases with an additional convenient forum reflects its desire to give a broad liberty of venue to petitioners. But it says nothing about its views on the proper distribution of judicial review between district and circuit courts.

At most, then, the inapplicability of the "unfair labor practice in question" venue option *creates* an ambiguity in what would otherwise be a very plain grant of jurisdiction to circuit courts to review all "final orders of the Board granting or denying the relief sought." It does not *resolve* that ambiguity in favor of district-court review.

> 2. The broader structure of the Act provides no firm indication that Congress wanted NLRB rulemakings to be reviewed in district court; indeed, all indications are to the contrary.

The second argument advanced by *AFL-CIO I* is structural—Section 10(f) is within a section dealing with the adjudication of unfair labor practices, entitled "Prevention of unfair labor practices," and so on. *AFL-CIO I*, at \*10.[9] This is true, but the Supreme Court in *AFL* explained why Congress structured the Act the way it did, with representation cases discussed in Section 9 and unfair labor practices discussed in Section 10:

> It is to be noted that § 9, which is complete in itself, makes no provision, in terms, for review of a certification by the Board and authorizes no use of the certification or of the record in a certification proceeding, except in the single case where there is a petition for enforcement or review of an order restraining an unfair labor practice as authorized by § 10(c).

*AFL*, 308 U.S. at 406. The purpose of the division, then, was to make clear that Section 10's review provisions did not extend to certifications issued under Section 9. *Id.* Congress's overtly

---

[9]The section heading provides little, if any, support for the *AFL-CIO I* holding. It is well settled that section titles are, at most, interpretive aids where a statute is ambiguous. *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 627 n.8 (D.C. Cir. 2020) ("Section headings are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotation omitted). But if that section is ambiguous, then the presumption that it covers judicial review of this type of case, *Nat'l Auto. Dealers Ass'n*, 670 F.3d at 270, necessarily dictates the outcome of the jurisdictional question here.

stated objective was to end the then-prevailing regime whereby any time the old National Labor Relations Board or its predecessors ordered a representation election, those elections would be tied up for years in labyrinthine judicial proceedings in district court—all while employee sentiment in favor of unionization dissipated into frustration at the incompetency of the law. *Id.* at 410-11. Accordingly, Congress placed its discussion of representation cases in Section 9 of the Act, 29 U.S.C. § 159, and provided for only limited review of the Board's determinations in such cases in the circumstances described by Section 9(d), 29 U.S.C. § 159(d). *Id.* at 411.

By contrast, there's no evidence that Congress even considered the locus for judicial review of rulemaking under Section 6 of the Act—and certainly no indication that it wanted district courts to perform that task. The legislative history is void on that subject, and that's no coincidence. As the D.C. Circuit cogently explained in *NYRSC II*, addressing a similarly-vague judicial-review provision in the Investment Advisors Act of 1940 (another piece of New Deal legislation):

> The *Investment Company* presumption reflects a pragmatic interpretation sensitive to developments in administrative law that could not have been foreseen by the Congress that enacted the Investment Advisers Act. When Congress enacted the Act in 1940, the courts generally declined to engage in pre-enforcement review of agency rules because such challenges were thought unripe. Nicholas Bagley, *The Puzzling Presumption of Reviewability*, 127 Harv. L. Rev. 1285, 1337–38 (2014). Drafters of review provisions thus were not typically considering those challenges.

*NYRSC II*, 799 F.3d at 1134.

The NLRA is no different than the Investment Advisors Act in this respect. Section 6 should be read in the context of the whole NLRA: "[O]ftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015).

14

What duties, then, are assigned by the Act to district courts? They can enforce Board orders if all available circuit courts are in vacation and unavailable (Section 10(e), 29 U.S.C. § 160(e)); they can issue pendent injunctions when irreparable harm will ensue if the case simply goes through the normal administrative process (Sections 10(j) and 10(l), 29 U.S.C. §§ 160(j), (l)); and they can enforce administrative subpoenas (Section 11(2), 29 U.S.C. § 161(2)). By contrast, circuit courts are given plenary power, in proceedings for the enforcement or review of a final Board order, to "make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board," 29 U.S.C. § 160(e). District courts act only on ancillary matters requiring swift action; circuit courts directly shape the very decrees which give the Act its force. *NLRB v. Warren Co.*, 350 U.S. 107, 112-13 (1955). Circuit courts are the lead actors in this drama; district courts are, at most, guest stars. Red flags should be raised by any position that would require district judges to opine on the merits of major substantive actions taken by the NLRB to enforce the Act.

   3.   The Supreme Court's dicta in *AFL v. NLRB* does not express any firm indication regarding the judicial review of NLRB rulemakings.

The *AFL-CIO I* court makes a third point—that the Supreme Court in *AFL* said that the Act "on its face thus indicates a purpose to limit the review afforded by § 10 to orders of the Board prohibiting unfair labor practices, a purpose and a construction which its legislative history confirms." 308 U.S. at 409; *see also AFL-CIO I*, at *10. At first blush, it would appear that *AFL* conflicts with the Board's position here.

But first and foremost, that language is dicta, coming at the end of a paragraph comparing ULP cases to representation cases. *AFL*, 308 U.S. at 409 ("Here it is evident that the entire structure of the Act emphasizes, for purposes of review, the distinction between an "order" of the Board restraining an unfair labor practice and a certification in representation proceedings.") The

holding of *AFL* is clear—orders directing elections and certifications in representation cases are not "final orders of the Board." *Id.* at 407-08. This conclusion is supported by both the Act's structure and its legislative history, as explained above and in footnotes 2 and 3 of the Court's opinion, *id.* at 409-10 nn. 2, 3. Because such orders are not final, they fail to satisfy Section 10(f)'s jurisdictional hook; there is no action for <u>any</u> court, district or circuit, to take in response to Board orders concerning a representation petition. *Cf. Boire v. Greyhound Corp.*, 376 U.S. 473 (1965) (district courts generally have no jurisdiction to review Board representation-case orders). The Court's dicta in *AFL* should therefore be read in the context of what it actually decided—that Section 10(f) does not apply to, or permit judicial review of, Board orders in representation cases. Nowhere does the Court discuss Section 10(f)'s alleged inapplicability to Board rulemaking; quite the contrary, its decision states that

> We must look rather to the language of the statute, read in the light of its purpose and its legislative history, to ascertain whether the "order" for which the review in court is provided, is contrasted with forms of administrative action differently described as a purposeful means of excluding them from the review provisions.

*AFL,* 308 U.S. at 408 (emphasis added). Such a stark contrast between "orders" and certifications of representative is wholly absent here—it's uncontested that Congress did not "purposeful[ly]" exclude rulemaking from circuit-court review. *AFL-CIO I*, at *10 (describing the legislative history as "scant"). The Supreme Court's analysis thus cannot be reconciled with the notion that the same court, mere sentences later, rejected not only the theory before it but any application of Section 10(f) to any Board order concerning any matter not relating to unfair labor practices. The question of rulemaking was not before the 1940 Court and was not decided there.

Second, there's a serious flaw in *AFL-CIO I*'s analysis on this point. Section 10(f) has long, and correctly, been held not merely to vest jurisdiction in circuit courts but also to preclude district court jurisdiction over matters excluded from Section 10(f)'s coverage. *Greyhound*, 376

U.S. at 481; *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 48 (1938). But if rulemakings are excluded from Section 10(f), as *AFL-CIO I* suggests, then the logic of that precedent would similarly preclude rulemaking challenges in district courts, as well. Such a result would be in considerable tension with the by now well-established proposition that pre-enforcement challenges to rules are generally permissible, *see Abbott Labs. v. Gardner*, 387 U.S. 136, 152-56 (1967) (explaining that rules are usually ripe for review upon issuance).

  *AFL-CIO I* fails to explain or even confront the inconsistency created by finding district court jurisdiction to review rules about representation cases but not representation cases themselves. It makes no sense that the same statutory provision can, as to individual representation cases, preclude court challenges entirely, *Greyhound*, 376 U.S. at 477, yet permit broad challenges to representation-case rules to proceed in district court. *AFL-CIO I* thereby produces a result at odds with the Act's statutory structure. That decision requires one to accept all of the following propositions: Congress (1) categorized unfair labor practice cases as final agency actions reviewable in circuit courts, (2) categorized representation case adjudications as non-final agency actions not subject to review in any court, and yet (3) *silently* categorized *rules relating to representation case adjudications* as final agency actions not directly reviewable in circuit courts and therefore required to be reviewed by the district court under the APA. Nothing in law, logic or legislative history supports such an outcome. Indeed, such an outcome produces the very ills—unexplainable bifurcation of judicial review, wasted resources spent litigating the exact same administrative record before both a trial and an appellate court, and so on—that led the D.C. Circuit to adopt the *Investment Company* presumption in the first place. 551 F.2d at 1279.

**<u>CONCLUSION</u>**

The D.C. Circuit has instructed district courts confronting statutory direct-appellate-review provisions like NLRA Section 10(f): read ambiguous language in favor of coverage unless there's no plausible way to do so. Section 10(f), a product of its times, is not a model of clarity, but this case meets the requirements of its jurisdictional triggering language—a final Board order that grants or denies relief. Even under *AFL-CIO I*'s holding that section 10(f) permits direct circuit-court review only of cases "that pertain[] to unfair labor practices as opposed to any other topic that the agency might have acted to address," this case indeed pertains to unfair labor practices.

Alternatively, however, *AFL-CIO I* was wrongly decided. The text of Section 10(f) makes the presence of an "unfair labor practice in question" relevant only to venue, not jurisdiction. The structure of the NLRA as a whole shows Congress's affirmative intent to exclude district courts from major policymaking roles. And the legislative history of Section 10(f), as *AFL-CIO I* acknowledged at *10, is "scant," and fails to rebut the *Investment Company* presumption. Accordingly, and in the absence of any unambiguous indication that Congress meant to limit the term "order" in Section 10(f) of the NLRA to orders deciding ULP cases, that section should be read with the breadth its language warrants. All final Board orders granting relief that are reviewable in any court should, under the terms of that section, be reviewed exclusively in the circuit courts of appeal.

This Court thus lacks jurisdiction over this case. The case should be transferred and continued as a petition for review of the Board's final rule, pursuant to 28 U.S.C. § 1631.

Dated: August 11, 2020

Respectfully submitted,


WILLIAM G. MASCIOLI
*Assistant General Counsel*

DAWN L. GOLDSTEIN
*Deputy Assistant General Counsel*

POLLY MISRA
*Supervisory Attorney*

/s/Paul A. Thomas
PAUL A. THOMAS
*Trial Attorney*

PORTIA GANT
*Trial Attorney*

National Labor Relations Board
Contempt, Compliance and Special Litigation Branch
paul.thomas@nlrb.gov
(202)273-3788
1015 Half St. SE
Washington, DC 20003

### CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that the attached document was filed on August 11, 2020, and served upon counsel of record for all parties via the court's CM/ECF system.

<u>/s/ Paul A. Thomas</u>