**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, <br><br> and <br><br> BALTIMORE-DC METRO BUILDING AND CONSTRUCTION TRADES COUNCIL <br><br>   Plaintiffs, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, <br><br>   Defendant. | Civil Case No. 1:20-cv-01909-BAH |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR TRANSFER TO THE D.C. CIRCUIT**

**Preliminary Statement**

Plaintiffs American Federation of Labor and Congress of Industrial Organizations and the Baltimore-DC Metro Building and Construction Trade Council ("AFL-CIO") file this response in opposition to Defendant National Labor Relations Board's ("NLRB" or "Board") Motion to transfer this action to the D.C. Circuit. Def. NLRB's Mot. for Transfer to the D.C. Circuit, ECF Doc. 10 ("Mot. for Transfer").  The NLRB comes yet again to this District Court to claim that § 10(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(f), grants the D.C. Circuit initial subject-matter jurisdiction, not merely over challenges to NLRB orders issued in unfair labor practice cases, but also over challenges to NLRB-promulgated rules and regulations regarding representation cases.  The Board's position is contrary to the statute's text and to an

unbroken line of precedent interpreting that text stretching from the Supreme Court's definitive interpretation of § 10(f) in *American Federation of Labor v. NLRB*, 308 U.S. 401 (1940), to this District Court's decision earlier this summer in *AFL-CIO v. NLRB*, 1:20-cv-0675, 2020 WL 3041384 (D.D.C. June 7, 2020) ("*AFL-CIO I*"). Indeed, until the *AFL-CIO I* case, the Board itself advocated the contrary position – that § 10(f) applies only to challenges seeking judicial review of orders granting or denying relief in unfair labor practice adjudications. As the Board's motion is without merit, it must be denied.

## <u>Argument</u>

### A.      Section 10(f) of the NLRA Does Not Provide an Exception to the General Rule that Challenges to Agency Rulemaking Must Be Filed in District Courts

The Board agrees that the agency rulemaking at issue in the instant lawsuit is subject to review under the Administrative Procedure Act ("APA"). *See* Joint Status Report, ECF Doc. 11, p. 1. "[U]nless Congress expressly says otherwise, APA review takes place first in the federal district courts, not the courts of appeals." *Rodriguez v. Penrod*, 857 F.3d 902, 906 (D.C. Cir. 2017); *see also Nat'l Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012) ("the normal default rule is that persons seeking review of agency action go first to district court rather than to a court of appeals" (citations and quotation marks omitted)).

Congress may remove a matter from the general rule of district-court jurisdiction by providing "a specific direct-review statute" that authorizes parties aggrieved by an agency action to proceed directly to a court of appeals. *Loan Syndications & Trading Ass'n v. SEC*, 818 F.3d 716, 719 (D.C. Cir. 2016). But a court of appeals' "jurisdiction under a direct review statute *is strictly limited to the agency action(s) included therein*." *Ibid* (emphasis added; citation and quotation marks omitted).

2

The "direct-review statute" that the NLRB invokes here to argue that this case falls outside the general rule of district-court review is subsection (f) of NLRA § 10, 29 U.S.C. § 160(f).  But it is clear from the text of subsection (f) itself, from the context in which subsection (f) appears in the NLRA, and from a decades-long unbroken line of Supreme Court and circuit court case law, as well as this District Court's just-issued decision, that subsection (f) deals only with judicial review in unfair labor practice cases.  As such, it does not encompass judicial review of the matter before this Court, which is an APA challenge to a rule governing representation case proceedings.

"The Board has two main functions under the NLRA.  Its quasi-judicial function involves deciding whether particular conduct violates the provisions of the Act that bar unfair labor practices." *UC Health v. NLRB*, 803 F.3d 669, 670 (D.C. Cir. 2015); 29 U.S.C §§ 158, 160. "The Board also has the primary responsibility for directing and holding representation elections by which employees may choose to designate representatives for purposes of collective bargaining." *Id*. at 671; 29 U.S.C. § 159(b), (c).

Section 10 of the NLRA is captioned "Prevention of *unfair labor practices*." 29 U.S.C. § 160 (emphasis added).  As its caption indicates, that section deals solely with the NLRB's authority to address the "unfair labor practices" ("ULPs") enumerated in § 8 of the NLRA. *See* 29 U.S.C. § 158.  A party who believes that a ULP has been committed may file a charge with the Board, which may then, through its general counsel, bring a complaint against the alleged perpetrator of the ULP – a complaint that can either result in a grant of relief by the Board to the harmed party, a denial of relief if the Board finds the complaint to be without merit, or a partial grant and partial denial. *See* 29 U.S.C. § 160(b)-(d) & *infra*.

3

Section 10 has nothing to do with the NLRB's authority to resolve questions of representation – an authority that is provided for in § 9 of the NLRA, 29 U.S.C. § 159. Section 9 is captioned "Representation and Elections," and allows the Board to, *inter alia*, determine appropriate bargaining units, hold secret ballot elections, and certify the results of those elections. *See also Chamber of Commerce of U.S. v. NLRB*, 118 F. Supp. 3d 171, 180 (D.D.C. 2015) (reviewing provisions of NLRA § 9).

Section 10 also has nothing to do with the NLRB's authority to make rules and regulations – an authority that is addressed in § 6 of the NLRA, 29 U.S.C. § 156. Section 6 is captioned, appropriately enough, "Rules and regulations," and provides: "The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by subchapter II of chapter 5 of Title 5 [i.e., the APA], such rules and regulations as may be necessary to carry out the provisions of this subchapter." *See also Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 609-10 (1991) (discussing Board's APA rulemaking authority). Indeed, the legislative history indicates that Congress intended the Board's § 6 rulemaking authority to be subject solely to the prescriptions and principles of the APA. H.R. Conf. Rep., No. 510, 80th Cong. 1st Sess., p. 38 (1947) (explaining that in 1947 Congress inserted a reference to the APA into § 6 "to assure that the subsequent amendment of the National Labor Relations Act without changing this section w[ould] not supersede the general rules prescribed in the Administrative Procedure Act which are now applicable to the Board's powers to promulgate regulations.").

Section 10(f) itself provides in pertinent part as follows:

(f) Any person aggrieved by a final order of the Board *granting or denying in whole or in part the relief sought* may obtain a review of such order in any United States court of appeals in the circuit wherein *the unfair labor practice in question* was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by

filing in such a court a written petition praying that the order of the Board be modified or set aside.

29 U.S.C. § 160(f) (emphasis added).

Thus, by its terms, § 10(f) is confined to judicial review of final orders issued in unfair labor practice cases. Since only an unfair labor practice proceeding, and not a rulemaking involving representation proceedings, involves the "granting or denying in whole or in part of the relief sought," it makes no sense to read §10(f) as having any application to rules promulgated regarding representation proceedings pursuant to the Board's § 6 rulemaking authority.

A further indication of Congress' clear intent in this regard is § 10(f)'s provision for review of "such order in any United States court of appeals in the circuit wherein *the unfair labor practice in question* was alleged to have been engaged in[.]" This provision clearly suggests that Congress intended the entire section to apply only to cases in which there was an "unfair labor practice in question." There is no unfair labor practice in question in this challenge to the Board's Final Rule; accordingly, it makes no sense to read subsection (f) to encompass the instant action.

That § 10 deals exclusively with unfair labor practices and that subsection (f) authorizes judicial review only of Board orders involving unfair labor practices becomes even clearer when one considers the subsections in § 10 that precede subsection (f).

Subsection (a) of § 10 empowers the NLRB "to prevent any person from engaging in any unfair labor practice (listed in section [8])." 29 U.S.C. § 160(a). Subsection (b) establishes the complaint and hearing procedures that apply "[w]henever it is charged that any person has engaged in or is engaging in any unfair labor practice." 29 U.S.C. § 160(b). Subsection (c) provides that, upon conclusion of the procedures outlined in subsection (b), "[i]f upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in

the complaint has engaged in or is engaging in any such unfair labor practice, then the Board

shall state its findings of fact and shall issue and cause to be served on such person *an order*

requiring such person to cease and desist from such unfair labor practice[.]" 29 U.S.C. § 160(c)

(emphasis added).

The Board's orders, issued pursuant to subsection (c) of § 10, are not self-enforcing.

Subsection (e) states that "[t]he Board shall have power to petition any court of appeals of the

United States . . . within any circuit . . . wherein the unfair labor practice in question occurred or

wherein such person [named in the complaint] resides or transacts business, for the enforcement

of such order[.]" 29 U.S.C. § 160(e).  And subsection (f), the provision the NLRB invokes here,

is the complement to subsection (e), as it provides that a private party aggrieved by an NLRB

"order" issued pursuant to the same subsection (c) may obtain judicial "review of such order in

any United States court of appeals in the circuit wherein the unfair labor practice in question was

alleged to have been engaged" and that "the court shall proceed in the same manner as in the

case of an application by the Board under subsection (e)" to enforce an unfair labor practice

order. 29 U.S.C. § 160(f).

For these reasons, § 10(f), read on its own and in conjunction with the remainder of § 10,

is plainly limited to the judicial review of orders in unfair labor practice cases.  In contrast,

legislative history strongly suggests that Congress intended the Board's § 6 rulemaking authority

to be subject to the general principles of the APA.

**B.      For Eighty Years, the Courts Have Consistently Read § 10(f) to Only Apply to Unfair Labor Practice Adjudications, and the Board Itself Held this Position until Earlier this Year**

The proposition that § 10(f) is limited to judicial review of orders in unfair labor practice

cases is confirmed by the Supreme Court's seminal decision in *American Federation of Labor v.*

*NLRB*, 308 U.S. 401 (1940).  There, the Court answered the question whether a certification of a bargaining representative issued to a union pursuant to the procedures outlined in § 9 of the NLRA was a "final order of the Board" within the meaning of § 10(f) such that an aggrieved private party could obtain judicial review of the certification in a court of appeals.  In finding that a certification is *not* a final order within the meaning of § 10(f), the Court canvassed § 10 and its subsections, just as we have done above; took note of the fact that Congress captioned § 10 "Unfair labor practices"; and held that the "statute on its face [ ] indicates a purpose *to limit the review afforded by § 10 to orders of the Board prohibiting unfair labor practices*, a purpose and a construction which its legislative history confirms." *Am. Fed'n of Labor*, 308 U.S. at 409 (emphasis added).[1]

The Supreme Court has not deviated from this interpretation of § 10. Thus, in *NLRB v. UFCW, Local 23*, 484 U.S. 112, 127 (1987), the Court held that "Section 10 specifies the procedure for adjudicating unfair labor practice charges" and that, "in the context of the entire section," "Subsection 10(f)," when "[f]airly read," "encompass[es] any Board adjudication resolving an unfair labor practice complaint, whether by final order, consent decree, or settlement."

Not surprisingly, given the clarity of the text of § 10(f) and the Supreme Court's definitive interpretation of that text in *American Federation of Labor*, the NLRB consistently and for decades took the position that § 10(f) applies only in unfair labor practice cases.  Thus, in

---

[1] The Board argues that the quoted language is dicta. Mot. for Transfer, p. 15-16.  The Board is wrong.  The quoted language contains the Court's rationale for holding that orders issued in representation cases are not subject to review under § 10(f).  That rationale is not dicta, and applies directly here.

7

*Laundry Workers Int'l Union Local 221 v. NLRB*, 197 F.2d 701 (5th Cir. 1952), the Fifth Circuit

wrote:

> Agreeing with, we adopt as our own, the following from the brief of the Board:

> Under the decisions of the Supreme Court and the courts of appeals it has long been established that the phrase 'a final order of the Board', as used in this section [§ 10(f)], refers *solely* to an order of the Board either dismissing a complaint in whole or in part or directing a remedy for the unfair labor practices found – in either case an order entered as the culmination of the procedure described in Section 10(b) and (c) of the Act.

*Id*. at 703 (emphasis added). *See also Lincourt v. NLRB*, 170 F.2d 306, 307 (1st Cir. 1948) ("We

agree with the Board that the phrase 'a final order of the Board' as used in this subsection 'refers

solely to an order of the Board either dismissing a complaint in whole or in part or directing a

remedy for the unfair labor practices found, that is to an order entered as the culmination of the

procedure described in Section 10(b) and (c) of the Act, as amended.'").  The NLRB indeed

reiterated this same position in a brief filed earlier this year. *See* Br. in Supp. of Defs' Mot. to

Dismiss for Lack of Subject Matter Jurisdiction at 8, *Int'l Ass'n of Machinists & Aerospace

Workers v. Ring*, No. 2:19-cv-03214-BHH (D.S.C. Jan. 31, 2020), ECF No. 25-1 ("Section 10(e)

and (f) provides for review, in an appropriate court of appeals, *only* of a 'final order of the

Board' entered in an *unfair labor practice* proceeding under Section 10" (emphases added)).

Equally unsurprisingly, the courts of appeals have, without exception, read § 10(f) as

limited to judicial review of NLRB orders in unfair labor practice cases. *See, e.g.,*

*Manhattan Constr. Co. v. NLRB*, 198 F.2d 320, 321 (10th Cir. 1952) ("The phrase 'final order of

the Board' as used in the statute refers solely and exclusively to an order of the Board either

dismissing a complaint in whole or in part or directing a remedy relating to an unfair labor

practice entered under section 10(b) and (c)."), *citing Gen. Drivers, Chauffeurs, and Helpers,*

*Local 886, v. NLRB*, 179 F.2d 492, 494 (10th Cir. 1950) (same); *Inland Container Corp. v.*

8

*NLRB*, 137 F.2d 642, 643 (6th Cir. 1943) ("Only under Sec. 10 may application be made to the circuit courts of appeals: under subsec. (e) by the Board for enforcement of an order involving an unfair labor practice; and under subsec. (f) by an aggrieved person for review of such an order.").

This uniform line of precedent in the circuit courts extends to all actions of the Board outside final orders in unfair labor practice cases.  For example, in *Keiler v. NLRB*, No. 95-1192, 1996 WL 103746 (D.C. Cir. 1996), petitioner sought review in the D.C. Circuit of an order suspending petitioner from practice before the Board.  The Circuit Court held that such an order "is not an order 'granting or denying in whole or in part the relief sought' in an unfair labor practice complaint, therefore this court lacks subject matter jurisdiction." *Id.* at *1.  The Circuit Court then transferred the lawsuit to the district court. *Ibid*; s*ee also NY Racing Ass'n v. NLRB*, 708 F.2d 46, 54 (2d Cir. 1983) (district court has jurisdiction to review Board's decision made pursuant to § 14(c), which allows the Board to decline jurisdiction over a category of employees "by rule of decision or by published rules adopted pursuant to [the APA]").

Accordingly, Supreme Court precedent, as well as appellate precedent from the D.C. Circuit and other circuits, consistently hold that § 10(f)'s phrase "final order of the Board" refers solely to an order resolving an unfair labor practice proceeding.  This is likely why challenges to rules issued by the Board have always originated in the district courts,[2] and why the Board had never argued that proper jurisdiction was with the circuit court until just this year.

---

[2] *See Am. Hosp. Ass'n v. NLRB*, 718 F. Supp. 704 (N.D. Ill. 1989), *rev'd*, 899 F.2d 651 (7th Cir. 1990), *aff'd*, 499 U.S. 606 (1991) (upholding rule defining collective-bargaining units in the healthcare industry); *Nat'l Ass'n of Mfrs. v. NLRB*, 846 F. Supp. 2d 34 (D.D.C. 2012), *aff'd in part, rev'd in part*, 717 F.3d 947 (D.C. Cir. 2013) (invalidating rule requiring employers to post notice of employee rights under NLRA); *Chamber of Commerce of U.S. v. NLRB*, 856 F. Supp. 2d 778 (D.S.C. 2012), *aff'd*, 721 F.3d 152 (4th Cir. 2013) (same), *Chamber of Commerce of U.S. v. NLRB*, 879 F. Supp. 2d 18 (D.D.C. 2012) (invalidating 2011 rule amending representation case regulations for lack of Board quorum); *Chamber of Commerce of U.S. v. NLRB*, 118 F. Supp. 3d 171 (D.D.C. 2015) (upholding 2014 rule amending representation case

The first time the Board argued that, under § 10(f), a circuit court has original jurisdiction over an APA challenge to a rule issued pursuant to § 6 of the NLRA was earlier this year in this District Court in *AFL-CIO I*.  Consistent with the Supreme Court and circuit court precedent discussed *supra*, and the Board's own prior position, Judge Ketanji Brown Jackson rejected the Board's argument. *AFL-CIO I*, 2020 WL 3041384 at *9-11.

In *AFL-CIO I*, the Board sought to transfer the plaintiff's APA challenge to the Board's rulemaking amending and supplementing certain representation case regulations from this District Court to the D.C. Circuit.  Judge Jackson wrote that "by its terms, the direct-review provision [§ 10(f)] is quite specific and relatively narrow, insofar as it provides for direct judicial review in the court of appeals of only those 'orders' of the NLRB that are 'final,' and such final orders must 'grant[ ] or deny[ ]' some type of 'relief' that has been 'sought' by an entity that the NLRA governs." *Id*. at *9.  Judge Jackson doubted the Board's rulemaking could be construed to grant or deny any relief to a regulated party. *Ibid*.  This "conclusion" was "clinche[d]" for the Court by § 10(f)'s reference to the "unfair labor practice in question[,]" which Judge Jackson considered "a textual reference that strongly suggests that the provision is only triggered when some kind of unfair labor practice is at issue." *Ibid*.

Judge Jackson "confirm[ed]" that this interpretation was the "only possible reading of [§ 10(f)'s] direct-review provision" by reviewing the structure of § 10 generally. *Id*. at *10.  Judge Jackson noted that § 10(f) "appears as an integral part" of § 10, and "all the other subdivisions relate exclusively to proceedings for the prevention of unfair labor practices." *Ibid*, *quoting Am. Fed. of Labor v. NLRB*, 308 U.S. at 407 (brackets omitted).  "[B]ecause the *entirety* of [§ 10]

---

regulations); *Associated Builders & Contractors of Tex., Inc. v. NLRB*, No. 1-15-CV-026 RP, 2015 WL 3609116 (W.D. Tex. 2015), *aff'd*, 826 F.3d 215 (5th Cir. 2016) (same); *AFL-CIO I*.

solely focuses on NLRB orders on unfair labor practice disputes," Judge Jackson determined

that, "the only reasonable construction of subdivision (f) takes into account that it only concerns

NLRB orders on unfair labor practice disputes as well." *Id*. at *10 (emphasis in original).  In

reaching this conclusion, Judge Jackson pointed out that the "NLRB provide[d] no explanation

for its suggestion that Congress intended to place [§ 10(f)] in the heart of a section solely

governing unfair labor practices, and yet somehow meant for this particular provision alone to

apply more broadly." *Ibid*.

Judge Jackson found further support for her reading of § 10(f) in the overall structure of

the NLRA and its legislative history. *See ibid* (recognizing that the Act empowers the Board to

resolve unfair labor practices and questions of representation, with the first power encompassed

within § 10 and the second separately and distinctly within § 9).

Judge Jackson concluded that

[t]his all means that both Congress's own description of the intended purpose of [§ 10] and [§ 10(f)], and also the text and structure of the statute that Congress crafted to convey that intent, leave no doubt as to the limited scope of the direct review created by the NLRA; it concerns the enforcement and review of NLRB orders that pertain to unfair labor practices.

*Id*. at *11.  Because § 10(f) is unambiguous as to congressional intent, Judge Jackson rejected the

Board's argument that the Plaintiff's action was not subject to the general rule of initial district-

court jurisdiction over APA matters. *Id*. at *12.  In her decision, Judge Jackson expressed no

view as to whether § 10(f) could be interpreted to include a § 6 rulemaking that pertains to unfair

labor practices. *Id*. at 12 n. 9.

Judge Jackson's decision was based on the language of § 10(f), subsection (f)'s

placement within § 10, the greater structure of the NLRA, and the Act's legislative history.

Pursuant to that decision, and the eighty years of precedent that preceded it, it is clear that the

only "agency actions included" in § 10(f) are agency orders disposing of unfair labor practice cases. The general rule of district court jurisdiction over challenges to agency rules applies here and lodges original jurisdiction in this Court.

## C.      The Board's Arguments against Application of this District Court's Decision in *AFL-CIO I* are Without Merit

In the face of all this, the Board insists that the instant APA challenge to a rule regarding representation case regulations, issued pursuant to the NLRA's § 6, belongs in the D.C. Circuit under § 10(f). In support of its position, the Board relies on a line of cases that provide for direct appellate review of agency rules only when two conditions are met: *first,* the direct-review statute invoked by the challenging party is ambiguous as to its scope, and *second*, there is no firm indication that Congress intended for the default rule of district-court jurisdiction to apply. Under this line of cases, the D.C. Circuit has held that "when a statute does grant direct review, but its application to the agency action in question is 'ambiguous,' we will 'not presume' that 'Congress intended to locate initial APA review of agency action in the district courts' rather than the courts of appeals – '[a]bsent a firm indication that Congress [so] intended.'" *Nat'l Auto. Dealers Ass'n*, 670 F.3d at 270 (alterations in original), *quoting Fla. Power and Light Co. v. Lorion*, 470 U.S. 279, 737, 745 (1985). The D.C. Circuit has counseled that "this presumption, however helpful, cannot overcome the commands of Congress. Ultimately, 'whether initial subject-matter jurisdiction lies initially in the courts of appeals must of course be governed by the intent of Congress and not by any views we may have about sound policy.'" *Loan Syndications & Trading Ass'n*, 818 F.3d at 720, *quoting Lorion*, 470 U.S. at 746 (brackets omitted). *See also New York Republican State Comm. v. SEC*, 799 F.3d 1126, 1131 (D.C. Cir. 2015) (the presumption only applies "absent contrary congressional intent").

12

Here, as we have conclusively shown, there is nothing ambiguous about § 10(f).  Indeed, the Supreme Court long ago held that both "on its face" and when read in conjunction with the balance of § 10, the provision "indicates a purpose to limit the review afforded by § 10 to orders of the Board prohibiting unfair labor practices." *Am. Fed'n of Labor,* 308 U.S. at 409.  Judge Jackson came to the exact same conclusion earlier this summer.  Further, the same textual indicators that led every reviewing court to that same conclusion also provide the requisite "firm indication" that Congress did not intend to provide for direct appellate review of a rule concerning representation election proceedings.

The Board attempts to escape the overwhelming precedent contrary to its position by first, distinguishing Judge Jackson's decision in *AFL-CIO I*, and second, by attacking that decision's reasoning.  Its arguments are meritless.

The Board attempts to distinguish *AFL-CIO I* by claiming that the rule at issue in the instant action "affect[s] unfair labor practices," and, therefore, falls into the situation regarding which Judge Jackson stated she was expressing no view. Mot. for Transfer, p. 11; *see AFL-CIO*, 2020 WL 3041384 at *12 n. 9.  According to the Board, "two of the Final Rule's three provisions impact either the way unfair labor practice cases are litigated or the issues that can be raised in such cases." Mot. for Transfer at 9.  The Board buttresses this claim by speculating that 1) the "elimination of blocking charges will predictably result in a significant increase in the number of cases" in which representation and unfair labor practice matters are consolidated, and 2) modifications to the voluntary recognition bar "*may* either create unfair labor practice liability" "or eliminate it." *Id.* at 9-10 (emphasis added).  The Board's argument is easily dismissed.

Despite the Board's speculation, the Final Rule clearly only concerns representation case regulations.  The Board titled its Final Rule, "*Representation-Case Procedures*: Election Bars; Proof of Majority Support in Construction-Industry Collective-Bargaining Relationships." 85 Fed. Reg. 18366 (emphasis added).  The Board summarized the Final Rules as follows: "the National Labor Relations Board [ ] hereby makes *three amendments to its rules and regulations governing the filing and processing of petitions for a Board-conducted representation election and proof of majority support* in construction-industry collective-bargaining relationships." *Ibid* (emphasis added).  And review of the actual amendments themselves, rather than speculation drawn from stray remarks in the Final Rule's preamble, shows that each is directed at the processing of representation petitions.

The Final Rule adds a new Subpart B to Part 103 of the Board's rules and regulations. The new subpart is entitled "Election Procedures," and has three sections:

- § 103.20, entitled "Election procedures and blocking charges," details the circumstances in which unfair labor practice charges will "*block the election process*." 85 Fed. Reg. 18399 (emphasis added).

- § 103.21, entitled "Processing of petitions filed after voluntary recognition," states that "[a]n employer's voluntary recognition" of a union as "exclusive bargaining representative" "under section 9(a) of the Act," and the parties "first collective-bargaining agreement" following that voluntary recognition, "*will not bar the processing of an election petition*" unless certain criteria are met. *Ibid* (emphasis added).

- § 103.22 states "[a] voluntary recognition or collective-bargaining agreement between a [construction industry] employer" and union "*will not bar any election petition filed pursuant to section 9(c) or 9(e) of the Act* absent positive evidence that the union unequivocally demanded recognition as the section 9(a) exclusive bargaining representative" and that "the employer unequivocally accepted it as such, based" on a showing of support other than just collective-bargaining language. 85 Fed. Reg. 18400 (emphasis added).

Thus, the Board's Final Rule amends only its representation case regulations, and applies only in those cases.  The Final Rule is indistinguishable from the rule at issue in *AFL-CIO I*.

14

The Board's arguments that *AFL-CIO I* was wrongly decided are similarly unavailing, and each can be easily dismissed in turn.

The Board initially argues that *AFL-CIO I* "inappropriately conflates venue with subject-matter jurisdiction," because § 10(f) "references unfair labor practices only as a possible basis for venue, not as a jurisdictional prerequisite." Mot for Transfer, p. 11.  According to the Board, § 10(f)'s reference to "*the* unfair labor practice in question" (emphasis added) has "no relevance" to the current inquiry, because that language merely "supplie[s] petitioners seeking review of unfair labor practices with an additional convenient forum[.]" *Id*. at 12-13.

The NLRB ignores that Judge Jackson found that, "there is no reasonable argument that credibly casts the [Board's rule regarding representation case regulations] as an agency action that grants or denies any relief to a regulated party, and this problem alone is sufficient to cast doubt on the NLRB's contention that [§ 10(f)] applies to the AFL-CIO's claims." *AFL-CIO I*, 2020 WL 3041384 at *10.  Judge Jackson looked to § 10(f)'s phrase regarding "the unfair labor practice in question" to "clinch[ ]" this "conclusion," reading it as "a textual reference that strongly suggests that the provision is only triggered when some kind of unfair labor practice is at issue." *Id*. at *10, 11.  In other words, Judge Jackson had already rejected the Board's argument based solely on the language it now claims is the only relevant language.  She read the "venue" language to "clinch[ ]" that "conclusion," which it certainly does by evidencing Congress' intent that § 10(f) applies only to cases in which there is an "unfair labor practice in question."[3]

---

[3] As Judge Jackson further explained, "subsection (f) is also in the nature of 'a venue clause' … insofar as it specifies *which* of the courts of appeals such aggrieved persons can petition to obtain judicial review.  But the text, structure, and legislative history of this direct-review provision unequivocally establishes that, at bottom, the *subject* of a petition for review that is filed with the court of appeals under section 160(f) must be an NLRB action that pertains

The Board further suggests that Judge Jackson wrongly rejected its argument by claiming that this case "falls well within the literal language of Section 10(f)" because "the 'relief' sought (and granted) is the Board's enactment of three significant rules." Mot. for Transfer, p. 12. Judge Jackson appropriately called "this [an] odd argument" that "demands an entirely unnatural reading of what it means to seek relief from the NLRB[.]" *AFL-CIO I*, 2020 WL 3041384 at *10 n. 6.[4]  She further identified it as a "strawman" because it "sidesteps the fact that, regardless of who initiates the rule, [§ 10(f)] only conceivably applies to agency actions that pertain to unfair labor practices." *Ibid*.

Aside from being an "odd argument" and a "strawman," the Board's argument that it is empowered to issue a final order, within the meaning of § 10(f), based on relief it sought and granted itself, would necessarily include the authority to do so in an unfair labor practice case without the prerequisites of §§ 10(b) and (c), which include, *inter alia*, the filing of a charge by a non-agency entity alleging an unfair labor practice, the issuance of a complaint setting forth the allegations, and the holding of a hearing. 29 U.S.C. §§ 160(b), (c).  Indeed, under § 10(e), the Board could then petition a circuit court to enforce this final order issued *sua sponte*. 29 U.S.C. § 160(e).  Clearly, the Board has no such power. *See Chamber of Commerce of U.S. v. NLRB*, 856 F. Supp. 2d 778, 791 (D.S.C. 2012) ("It is clear from the structure of the Act that Congress intended the Board's authority over employers to be triggered by an outside party's filing of a representation petition or ULP charge."), *aff'd*, 721 F.3d 152 (4th Cir. 2013).

The NLRB next argues that the structure of the Act "provides no firm indication" of

---

to unfair labor practices as opposed to any other topic that the agency might have acted to address." *AFL-CIO I*, 2020 WL 3041384 at *11 (emphasis in original).

[4] Even if the Board could seek relief from itself, the Board never took any action that could be characterized as such and the Final Rule did not do anything that can be characterized as granting relief as those words are ordinarily understood.

congressional intent to limit the scope of § 10(f) to Board orders resolving unfair labor practice proceedings. Mot. for Transfer, p. 13.  The Board claims that Congress overtly separated representation case proceedings from unfair labor practice proceedings in order to prevent union elections from being delayed by litigation in federal courts. *Id*. 13-14.  By contrast, the rulemaking provision of § 6 says nothing about judicial review. *Id*. at 14.  Finally, the Board concludes that "circuit courts are the lead actors in this drama" and "district courts are, at most, guest stars" because §§ 10(e) and (f) give circuit courts the power, when reviewing orders issued in unfair labor practice cases, to enforce, set aside, or modify such orders. *Id.* at 15.

Putting aside that the Board's argument is overly reductive of Judge Jackson's exhaustive canvas of the provisions of § 10, as well as the Act generally and the conclusions she drew from it (and ignores her rejection of the argument, *see AFL-CIO I*, 2020 WL 3041384 at *11-12), the Board's argument is entirely unresponsive to *AFL-CIO I*'s holding on jurisdiction.  Judge Jackson wrote that "it is clear to this Court that it retains jurisdiction over the instant challenge to the NLRB's rulemaking, not because the NLRB has promulgated a rule rather than issuing an order, but because the NLRB's action regulates representation rather than unfair labor practices, such that subsection (f)'s direct-review provision does not apply." *AFL-CIO I*, 2020 WL 3041384 at *12.  Rather than proving *AFL-CIO I* wrong, the Board's argument, which emphasizes the distinction between representation and unfair labor practice proceedings, supports that case's holding and its application to the instant motion.  Further, its attempt to relegate this court to a "guest star" ignores completely that the "lead actor" role played by the circuit courts is a role that is limited to review of unfair labor practice cases.

The Board's final argument against *AFL-CIO I* begins: "The *AFL-CIO I* court makes a third point – that the Supreme Court in *[American Federation of Labor]* said that the Act 'on its

face thus indicates a purpose to limit the review afforded by § 10 to orders of the Board prohibiting unfair labor practices, a purpose and construction which its legislative history confirms. [*Am. Fed. of Labor*], 308 U.S. at 409; *see also AFL-CIO I*, at *10." Mot. for Transfer, p. 15.  The Board then endeavors to show that the quoted language is "dicta" and therefore that case says nothing relevant to the instant motion. *Id*. at 15-16.

This argument is particularly misleading; the District Court's *AFL-CIO I* decision *does not cite* the Supreme Court's *American Federation of Labor* case for this proposition, let alone quote it. *See AFL-CIO I*, 2020 WL 3041384 at *10-11.  Instead, *AFL-CIO I* concluded that § 10(f) is addressed only to final orders that resolve unfair labor practice cases based on its own independent review of the provision, the structure of the section and overall Act, and the legislative history.  But *AFL-CIO I*'s interpretation of § 10(f) is consistent with the definitive interpretation provided in *American Federation of Labor*, as is every other court decision that required a reading of § 10(f) since *American Federation of Labor*.[5]

Continuing its argument, the Board faults *AFL-CIO I* for "fail[ing] to explain or even confront the inconsistency created by finding district court jurisdiction to review rules about representation cases but not representation cases themselves." Mot. for Transfer, p. 17.  But the Board answers this supposed inconsistency itself when it explained that representation cases are not subject to direct review in order to avoid any individual representation election being "tied up for years in labyrinthine judicial proceedings in district court[.]" *Id*. at 14.  At the same time, a § 6 rulemaking regarding representation case regulations is subject to the general rule of initial

---

[5] As explained in footnote 1, *supra*, the Board's argument that the quoted language in *American Federation of Labor* is dicta, and not applicable to this case, is wrong.

district court jurisdiction that applies to APA challenges, which in no way threatens to delay individual representation cases.

Ultimately, to find the ambiguity required to remove the current action from the purview of the general rule, this Court would have to accept the following propositions: 1) though it placed the direct-review provision within the heart of a section that solely addresses unfair labor practice adjudications, Congress intended for that provision (and only that provision within § 10) to apply more broadly; 2) that a "final order of the Board granting or denying in whole or in part the relief sought" can include an order that "grant[s]" "relief" "sought" by the Board itself; and 3) that § 10(f)'s reference to "the unfair labor practice in question" was only intended to give aggrieved parties in unfair labor practice cases an additional convenient venue to file their appeal, and offers no textual indication that a § 10(f) final order must relate to an unfair labor practice.  In contrast, to deny the Board's motion, this Court needs to simply read § 10(f) consistent with its plain meaning as well as with eighty years of Supreme Court, circuit court, and now this District Court's precedent.

## <u>Conclusion</u>

For the reasons stated above, the AFL-CIO respectfully requests that the court deny the NLRB's Motion for Transfer.


Dated: September 1, 2020                    Respectfully Submitted,


                                            /s/ Maneesh Sharma
                                            Harold Craig Becker (D.C. Bar No. 371239)
                                            James B. Coppess (D.C. Bar No. 347427)
                                            Matthew J. Ginsburg (D.C. Bar No. 1001159)
                                            Maneesh Sharma (D.C. Bar No. 1033407)
                                            AFL-CIO Legal Department

815 16th Street, NW
Washington, DC 20006
(202)-637-5310
cbecker@aflcio.org

Jonathan D. Newman (D.C. Bar No. 449141)
Lucas R. Aubrey (D.C. Bar No. 982849)
Bartholomew J. Sheard (D.C. Bar No. 1542094)
Sherman Dunn, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C. 20001
aubrey@shermandunn.com
202-785-9300

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS,<br><br>and<br><br>BALTIMORE-DC METRO BUILDING AND CONSTRUCTION TRADES COUNCIL<br><br>       Plaintiffs,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>       Defendant. | Civil Case No. 1:20-cv-01909-BAH |

**[PROPOSED] ORDER**

Upon full consideration of Defendant National Labor Relations Board's Motion for

Transfer (ECF Doc. 10), and Plaintiffs' opposition, it is **ORDERED** that Defendant's motion is

**DENIED**.


Dated: _____          SO ORDERED:


                              _____
                              HONORABLE CHIEF JUDGE BERYL A. HOWELL

Attorneys entitled to be notified of the entry of this order:

Lucas Robert Jason Aubrey
Sherman Dunn, P.C.
900 Seventh Street, NW, Suite 1000
Washington, DC 20001
(202) 785-9300
aubrey@shermandunn.com

Matthew Ginsburg
815 Sixteenth Street, NW
Washington, DC 20006
202-637-5397
mginsburg@aflcio.org

Maneesh Sharma
815 Sixtheenth Street, NW
Washington, DC 20006
202-637-5336
msharma@aflcio.org

Portia-Elaine S. Gant
National Labor Relations Board
Contempt, Compliance, and Special Litigation Branch
1015 Half Street, SE, Fourth Floor
Washington, DC 20570
(202) 273-1921
portia.gant@nlrb.gov

Polly Misra
National Labor Relations Board
Contempt Compliance & Special Litigation
1015 Half Street, SE, Fourth Floor
Washington, DC 20003
202-273-3744
polly.misra@nlrb.gov

Paul Augustus Thomas
National Labor Relations Board
Contempt, Compliance & Special Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, DC 20003
(202) 273-3788
(202) 273-4244 (fax)
paul.thomas@nlrb.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2020, I electronically filed the foregoing Response in Opposition to Defendant's Motion for Transfer to D.C. Circuit and Proposed Order with the United States District Court for the District of Columbia by using the Court's CM/ECF system.  I further certify that the foregoing documents were served upon counsels of record for all parties via the Court's CM/ECF system.

<u>/s Maneesh Sharma</u>
Maneesh Sharma (D.C. Bar No. 1033407)
AFL-CIO Legal Department
815 16th Street, NW
Washington, DC 20006
(202)-637-5336
msharma@aflcio.org