April 20, 2020

John F. Ring, Chairman
c/o Roxanne L. Rothschild, Executive Secretary
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570-0001

  RE: Request for Reconsideration of, and Postponement of, the Joint Employer Rule

Dear Chairman Ring:

  We write on behalf of the AFL-CIO and its 55 affiliated national and international unions and the Service Employees International Union and its affiliated local unions, together representing 15 million working women and men, many of whom are essential workers on the front lines of the fight against Coronavirus, to request that the Board (1) reconsider its joint employer rule's exclusion of health and safety measures from among the "essential" terms and conditions of employment and (2) postpone the effective date of the rule, which is currently set to take effect April 27, 2020, until July 31, 2020.  *See* 85 Federal Register 11,184 (February 26, 2020).  The current public health crisis that is exposing essential workers, particularly in healthcare, to grave workplace dangers mandates these actions.

  We request reconsideration of one crucial aspect of the final joint employer rule:  the decision to not include safety and health measures among the "essential" terms and conditions of employment control over which is directly relevant to joint employer status.  *See* new 29 CFR § 103.40(b).  That means employees may not be able to bargain with the entity that controls the measures that ensure, or fail to ensure, their health and safety.  That entity may be a hospital, for example, that controls health and safety measures for employees of an agency supplying additional nurses to care for patients at the hospital.  Indeed, the preamble to the rule expressly and repeatedly states that "contractual safety . . . standards . . . do not support a finding of joint-employer status."  85 Federal Register 11,187.  *See also id.* at 11,194 ("contractual provisions requiring workplace safety practices . . . generally will not make joint-employer status more likely under the Act").  The error of this aspect of the final joint employer rule has recently become tragically evident.

  As the Board noted in its explanation of the final joint employer rule, 85 Fed. Reg. at 11,205, the Board received comments suggesting that safety and health measures should be included among the essential terms and conditions of employment control of which demonstrates joint employer status.  In particular, the comments filed on behalf of 1199SEIU United Healthcare Workers East (1199SEIU), cited at footnote 194 of the explanation for the final rule, presciently described examples of the "essential" nature of safety and health measures:

> To be clear, a hospital controls the movement of psychiatric
> patients within its walls and the ratio of contracted staff assigned to
> patients who might present a hazard to themselves or caregivers.
> A nursing home orders the supplies used by contracted staff tasked

1

> with disposal of bio-medical waste.  And a homecare agency decides the acuity of patients to which it assigns contracted home-health aides.  The proposed rule takes far too narrow a view of these essential terms and conditions of employment.  It is ill-advised to exclude necessary parties from bargaining obligations over terms and conditions such as these, especially when worker health and welfare and patient care are at stake.

In the final joint employer rule, the Board rejected the logic of those comments.  The Board "expanded" but also "made exclusive" a list of essential terms and conditions of employment that did not include safety and health measures.  The essential terms are limited to "wages, benefits, hours of work, hiring, discharge, discipline, supervision, and direction."  85 Fed. Reg. at 11,205.  The Board offered no specific explanation for failing to include safety and health measures on this list; it offered only generally that:  "The Act's purpose of promoting collective bargaining is best served by a joint-employer standard that places at the bargaining table only those entities that control terms that are *most material* to collective bargaining."  *Id*. (emphasis supplied).

The Coronavirus pandemic has only confirmed the centrality and materiality to employees and employers of safety and health matters.  For example, for temporary workers who are assigned by their temporary agency employer to work in a hospital where the hospital is the entity determining access to personal protective equipment and establishing the protocols for employee exposure to Coronavirus-infected patients, the hospital's control of those and other safety and health measures is not just among those "most material" to bargaining, it is, quite literally, a matter of life and death.  Indeed, the concerns in 1199SEIU's comment have been fully borne out by the pandemic. 1199SEIU is headquartered in New York City, the current epicenter of the country's COVID-19 emergency.  1199SEIU has learned from its represented employees that temporary employees' core safety and health terms—such as the access to and rules governing utilization of personal protective equipment, prophylactic procedures within facilities caring for infected patients and residents, and the procedures for interacting with confirmed COVID-19 patients—are being dictated not by their agency employers but by the administrators of the facilities where they are working (the "user employer" in the final joint employer rule's language).  These employees' experiences drive home how control over health and safety measures goes to the heart of an employee's working life.

Moreover, workers in all industries, not just the health care workers described above, are currently grappling with safety and health matters central to their work lives.  Poultry workers, fast food workers, grocery store employees, airport workers, manufacturing employees, truck drivers, building security guards, maintenance employees, and others are all facing grave questions about how to perform their essential jobs while limiting their exposure to the Coronavirus and maintaining safe practices (social distancing, wearing protective masks and gloves, etc.) to the extent possible.  Temporary and agency workers labor in each of those industries. Workers in each of those industries have gotten sick. And workers in each of those industries have died.

Finally, as the Board's decisions over the years classifying safety and health measures as mandatory subjects of bargaining demonstrate, there is a long history of collective bargaining over such subjects and established case law to guide the parties in addressing these matters. *See, for example*, *Gulf Power Co.*, 156 NLRB 622 (1966), *enf'd*, 384 F.2d 822 (5th Cir. 1967); *Holyoke Water Power Co.*, 273 NLRB 1369 (1985), *enf'd,* 778 F.2d 49 (1st Cir. 1985). That lengthy history exists precisely because health and safety measures are essential to workers' livelihoods and lives.

The record before the Board in the rulemaking proceeding, examined in light of the public health crisis the nation now confronts, calls for reconsideration of the Board's determination that safety and health matters are not "essential" terms and conditions of employment.

In addition, the Board should, at a minimum, delay the effective date of the joint employer rule consistent with the Board's April 10, 2020, postponement of the effective date of the "Representation-Case Procedures; Election Bars; Proof of Majority Support in Construction-Industry Collective Bargaining Relationships" ("representation issues") rule. As the Board's announcement stated, the Board postponed the representation issues rule "to allow the Board's employees and stakeholders to focus on continuity of their operations during the national emergency concerning the Coronavirus pandemic during the next several months, rather than on implementing and understanding the Board's new rule." 85 Federal Register 20,156 (April 10, 2020). The pandemic continues to rage; the Board's offices remain essentially closed to the public; the regional and headquarters staffs are teleworking; the Agency faces challenges in processing existing cases on its docket; and unprecedented public health concerns are requiring businesses and unions to alter their normal operations radically. Under these circumstances, the same pragmatic rationale supporting the postponement of the representation issues rule—including the need of the regulated community to focus on the "continuity of their operations"—counsels postponing the joint employer rule's effective date as well. We urge postponement until July 31, 2020, so that the two rules will become effective on the same date.

We urge the Board both to engage in the essential reconsideration and delay the effective date of the final joint employer rule.

Respectfully submitted,

| | |
|---|---|
| s/Craig Becker | s/Nicole Berner |
| Craig Becker | Nicole Berner |
| General Counsel | General Counsel |
| AFL-CIO | SEIU |
| 815 16th St., N.W. | 1800 Massachusetts Ave., N.W. |
| Washington, D.C. 20006 | Washington, D.C. 20036 |
| (202) 637-5310 | (202) 730-7383 |
| cbecker@aflcio.org | nicole.berner@seiu.org |